UNITED STATES DISTRICT
WESTERN DISTRICT OF LOUISIANA

AZALEA WOODS OF OUACHITA,
HALES FAMILY LIMITED
PARTNERSHIP (HFLP),
WESTSIDE PLAZA, LLC.,
MODACUP DEVELOPMENT, LLC AND
JDH MANAGEMENT, LLC

VERSUS          CASE #_____

THE PEOPLE'S REPUBLIC OF CHINA;
NATIONAL HEALTH COMMISSION OF
THE REPUBLIC OF CHINA; MINISTRY
OF EMERGENCY MANAGEMENT OF
THE PEOPLE'S REPUBLIC OF CHINA;
MINISTRY OF COMMUNITY AFFAIRS
OF THE PEOPLE'S REPUBLIC OF CHINA;
THE PEOPLE'S GOVERNMENT OF HUBEI
PROVINCE; AND THE PEOPLE'S AND
GOVERNMENT OF THE CITY OF WUHAN, CHINA

## CLASS ACTION COMPLAINT JURY DEMAND

Plaintiffs, Azalea Woods of Ouachita, Hales Family Limited Partnership (HFLP);Westside Plaza LLC., MODACUP Development and JDH Management, LLC on behalf of themselves and on behalf of all those similarly situated, by and through their undersigned counsel, JOSHUA L. STRICKLAND, hereby bring this class action against the People's Republic of China ("PRC"); National Health Commission of the People's Republic of China; Ministry of Emergency Management of the People's Republic of China; Ministry of Civil Affairs of the People's Republic of China; The People's Government of Hubei Province; and the People's Government of the City of Wuhan, China (collectively the "Defendants"), for the damages and other relief, and hereby allege as follows:

## INTRODUCTION

1. This class action complaint is brought by the Named Plaintiffs, which consist of the businesses in the State of Louisiana, and as defined for monetary and related damages sustained as a result of the coronavirus pandemic against the Defendants, the PRC and its various

government entities, which handled and managed the response to the discovery of the coronavirus, and upon information and belief, engaged in a cover-up of the coronavirus pandemic in China generally, and within Hubei Province and the City of Wuhan, thereby causing and/or contributing to the subsequent spread of the coronavirus all over the world, including to the United States of America ("US") and the State of Louisiana.

2. Trade between defendant and Louisiana businesses are intertwined and mutually dependant. The extensive business, relationships between the PRC and the US require honesty, accurate disclosure and transparency between the two countries, especially on any health issue or condition, which can cause a pandemic.

3. Defendant acted negligently, slowly and inadequately as follows:

   a) failure to timely assess the damage;
   b) failure to timely contain the damage;
   c) failure to timely notify and warn of the damage;
   d) failure to timely notify World Health Authority; and
   e) failure to timely suspend travel both within its borders and internationally.

4. These substandard and negligent acts of commission or of omission have created economic damage to the class of petitioners.

5. The conduct and misconduct of the Defendants has caused substantial monetary and related damages to the Named Plaintiffs and Class Members. These damages exceed hundreds of billions of dollars, and such damages will only increase in the future because many of these businesses have been ordered closed or are working at reduced capacity. The Defendants' conduct and misconduct has caused and will continue to cause the named Plaintiffs and Class Members, to suffer, among other things, reduced revenues, reduced profits and/or the closure of many Louisiana businesses".

## PARTIES

6. Plaintiff HFLP, is a Louisiana Limited Partner company which operates a real estate rental and management company in Louisiana. Currently this company's business is damaged because of the coronavirus pandemic.

7. Plaintiff, Azalea Woods of Ouachita is a Louisiana entity, which operates a vacation rental property in the State of Alabama and holds home development lots in Louisiana, said business is damaged.

8. Plaintiff, Westside Plaza, LLC is a Louisiana Limited Liability Company, which is a commercial real estate rental and management company and has offices in Louisiana. Currently, this company is experiencing a reduction in income and profits as a result of the coronavirus.

9. JDH Management LLC owns and operates business in Louisiana impacted by the events set forth below.

10. MODACUP Development, LLC owns and operates business n Louisiana impacted by the events set forth below.

11. Plaintiff Class Members are all businesses in Louisiana which are similarly situated to Named Plaintiffs.

12. The People's Republic of China ("the PRC") is a foreign nation.

13. The National Health Commission of the People's Republic of China is the administrative government body and executive department under the PRC which is responsible for monitoring and formulating health policies in Mainland China.

14. The Ministry of Emergency Management of the People's Republic of China is the administrative government body that coordinates emergency management, including health issues within the PRC.

15. The Ministry of Civil Affairs of the People's Republic of China is the administrative government body responsible for social and administrative affairs.

16. The People's Government of Hubei Province ("Hubei Province") is a foreign province and administrative head of Hubei Province in the PRC.

17. The People's Government of City of Wuhan, China ("Wuhan") is a foreign province and administrative head of the City of Wuhan, China.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005 (CAFA) and 28 U.S.C. §1332(d). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,00.00; there exists minimal diversity between parties; and there are thousand of Louisiana "small businesses" which are putative class members.

19. This Court further has jurisdiction under the Foreign Sovereign Immunities Act (FSIA) of 1976, 28 U.S.C §§ 1602 *et seq.,* and particularly the exceptions of §1605(a) (2) (for acts outside the territory of the United States in connection with a commercial activity of the Defendants, that cause a direct effect in the United States), and §1605 (a) (5) (for money damages for loss of property, occurring in the United States and caused by the tortious acts or omissions of Defendants, or of any official or employee of Defendants while acting within the scope of his office or employment).

20. There is exception to jurisdiction under the FSIA for "discretionary acts" because the Defendants have acted clearly contrary to the precepts of humanity, transparency, and/or their conduct is prohibited by the internal laws of the PRC and its provincial and municipal governments. Moreover, on March 9, 2020 the PRC admitted the Wuhan police acted improperly when they intimidated and forced Dr. Li Wenliang, who was a whistle blower that exposed the existence and dangers of this "new" virus, to sign a false statement. This coerced false statement in effect had Dr. Wenliang deny that a "new" virus had been discovered and was killing people in China. Then, the Defendants used this false statement to mislead the international community, including the US, regarding the seriousness of this "new" virus and the immense catastrophe that it could cause to countries, people and businesses all over the world.

21. This Court has personal jurisdiction over the Defendants because they have caused tortious harm to the Named Plaintiffs and Class Members, throughout Louisiana, and in this District, and have sufficient contacts in Louisiana and the rest of the US to render the exercise of jurisdiction by this Court permissible.

22. Venue is proper in this District pursuant to 28 U.S.C. §139(b)(2) and (c) because a

substantial part of the events or omissions giving rise to Named Plaintiffs' and Class Members' claims occurred in this District.

23. All conditions precedent to the filing of this lawsuit have been met and/or waived by the conduct of Defendants.

24. Plaintiffs assert that CHINESE VIRUS "COVID-19" virus created a NATIONAL PANDEMIC, which has cause and continues to cause economic hardship on businesses in the State of Louisiana.

25. Plaintiffs assert and allege that the Defendants also committed the following acts and omissions:

   a) People in Wuhan started to die from the virus in December, 2019 and the Defendants suppressed and/or under-reported this information;

   b) On December 27, 2019, Dr. Zhang Jixian, at the Hubei Provincial Hospital of Integrated Chinese and Western Medicine, sounded the alarm about a "new" disease that had already affected 180 patients, and the Defendants suppressed this information;

   c) From December 23-30, 2019, the first evidence of the new virus was revealed through Wuhan patient data, which had bee sent to multiple Chinese genomics companies. During this time period, the Hubei Health Commission ordered one of the genomics companies to stop testing on the new virus and to destroy all the data. Simultaneously, the Defendants pressured the press not to report these facts;

   d) On December 30, 2019, Dr. Li Wenliang ("Dr. Li") sent a message to his former classmates about a "new" virus infecting Wuhan residents and urged them to be careful;

   e) On December 31, 2019, which was almost 1 ½ months after the first reported case, Chines officials finally alerted the WHO about pneumonia with an "unknown cause" affecting the health of people in Wuhan. This disclosure was misleading because the destroyed data showed that the real cause was a newly discovered virus and it was far too late;

   f) On December 31, 2019, the Chinese Internet authorities started to censor all

social media references to this new disease and the government's response;

    g)  On December 31, 20109, the Wuhan seafood market, where the virus allegedly first broke out, was finally closed. Under the guise of "disinfecting" the area, governmental authorities intentionally failed to have doctors inspect the area and failed to swab individual animal cages or to draw blood from the workers in order to determine the "real" source of the virus;

    h)  On January 1, 2020, eight doctors, including Dr. Li, who had been disclosing the "new" virus, were detained and questioned by the police, who condemned them for "making false statements on the internet" about a new virus;

    i)  On January 3, 2020, China's National Health Commission issued a gag order on matters regarding the "new" virus, and ordered pneumonia samples from affected people to be moved to designated facilities or destroyed. The same Commission ordered medical institutions not to publish anything about this "unknown disease";

    j)  On January 5, 2020, Professor Zhang Yongzhen of the Shanghai Public Health Clinical Center provided the genomic sequence of the "new" virus to Chinese authorities;

    k)  On January 9, 2020, the WHO released a statement about the cluster of pneumonia cases in Wuhan, suggesting the cases were attributable to a new coronavirus, because they ruled out SARS, MERS, influenza, bird flu and other known pathogens;

    l)  On January 9, 2020, after being outed by the WHO, the Defendants finally announced the first "official death" of a coronavirus patient and that 59 additional people had coronavirus in Wuhan;

    m)  On January 10, 2020, the Defendants' agent and health expert, Wang Guangfa, told the Chinese state's China Central Television that the pneumonia was "under control" and downplayed the virus as a "mild condition";

    n)  On January 14, 2020, the WHO disclosed that there may have been human to human transmission of the "new" virus;

o) On January 14, 2020, Chinese police started detaining journalists trying to report the outbreak at the Wuhan Jinyintan Hospital. These journalists were also forced to delete any footages taken, and they were forced to give their phones to the police;

p) On January 15, 2020, Li Qun, the head of the Chinese CDC (Center for Disease Control) mislead the public by stating that the risk of human to human transmission "was low";

q) On January 18, 2020, despite the known COVID-19 crisis and its high level of contamination, the City of Wuhan held a "potluck" banquet for 40,000 people to try and break a world record;

r) On January 20, 2020, Dr. Zhong Nanshan, a top Chinese doctor who previously helped fight the SARS epidemic, stated during a television interview that COVID-19 was spreading from person to person. This same doctor later stated that if the Defendant PRC had acted in December 2019 or early January 2020 to contain the virus, "the number of sick would have been greatly reduced";

s) On January 20, 2020, the Mayor of Wuhan Zhou Xianwang admitted that Bejing's rules kept him from disclosing information about the Chinese Virus(COVID-19). Therefore the Defendants's failure to be transparent with the public, and failure to confront the COVID-19 crisis by ordering a quarantine for almost two months, was central to a pandemic occurring because the infection spread in an exponential manner. According to scientist almost 99% of the world's infections could have been avoided if the Defendants had acted properly in early December, 2019;

t) On January 22, 2020, the President of PRC Xi Jinping stated that he had ordered local officials to contain the virus as early as January 3, 2020. However, President Jinpin's position on January 22, 2020, is directly contradicted by the statements of the local Wuhan governmental officials;

u) On January 23, 2020, the City of Wuhan was ordered locked down. However, 5 million people had already left the city without being screened by that time, and nobody knows where these 5 million people traveled to;

v) On January 30, 2020, the first person to person case in the US is reported. This

involved the husband of a Chicago woman who brought the infection back from Wuhan, China;

   w) On February 6, 2020, to further control the narrative of "everything is under control", President Jinping orders China's Internet watch dog to further control social media platforms. On that same day, journalist and attorney Chen Qiushi, disappeared in Wuhan after posting footage from overcrowded hospitals and panicking families;

   x) On February 7, 20250, Dr. Li Wenliang, who was one of the first whistle blowers regarding COVID-19, died. The PRC disclosed that Dr. Wenliang allegedly died after contracting coronavirus from a patient that he was treating;

   y) On February 9, 2020, journalist Fang Bin mysteriously disappeared after posting videos about the COVID-19 crisis in Wuhan;

   z) On February 15, 2020, President Jinping further tightened control over the internet. On that same day Chinese activist Xu Zhiyong was arrested for writing an essay that called upon President Jinping to resign for his poor handling of the coronavirus pandemic;

   aa) On February 16, 2020, Chinese Professor Xu Zhangrun was arrested and banned from using the internet after he published an article negative to the Chinese government;

   bb) On March 11, 2020, the WHO declared that COVID-19 was a pandemic after it had spread to over 100 countries;

   cc) On March 14, 2020, another Chinese reporter, Ren Zhiqiang, disappeared after he criticized President Jinping's handling of the coronavirus epidemic;

   dd) On March 17, 2020, the PRC ordered journalists from the New York Times, Wall Street Journal and Washington Post to leave the country after they continued to report the out of control pandemic in China;

   ee) On March 19, 2020, after there was wide spread unrest in the PRC, the government publically announced that the Wuhan police had acted improperly when they had previously stated that whistle blower Dr. Li Wenliang was "spreading rumors" about the coronavirus in early

January 2020. However, even this 'admission' was misleading because Dr. Wenliang first complained in late December and his statements pertained to the existence of a "new" and deadly virus; and

    ff) As of March 22, 2020, the PRC's narrative is that the pandemic is under control in China and there are very few new deaths in China related to COVID-19. However, this PRC narrative is contradicted by Chinese Billionaire Guo Wengui who has stated that the Chinese government continues to under report illnesses and deaths because they are currently using portable incubators to cremate up to 1,200 bodies a day. Significantly, MR. Wengui's claims are supported by many scientists, who seriously doubt that the PRC, which has over 1.3 billion people, and had over 100,000 infected people only a few weeks ago, suddenly experienced a miracle that has resulted in "no new deaths".

    26.    It is reported that there are only two known Chinese government bio-weapon research labs in the PRC and one of the - the National Biosafety Laboratory at theWuhan Institute of Virology–is located in Wuhan, and is close in proximity to the Human Seafood Wholesale Market, where COVID-19 allegedly originated. This lab is considered China's only "level 4" microbiology lab- meaning it deals with the deadliest viruses. A plausible alternative theory is that COVID-19 escaped from Wuhan lab because of lax controls, or that Chinese researches sold lab animals to the marketplace in question, something researchers have been known to do in China, instead of cremating them as PRC law requires.

    27.    The Defendants' conduct has set off an unprecedented world-wide pandemic, which has caused panic, illnesses, deaths, and a global recession.

    28.    The Defendants' conduct and misconduct has been egregious, contrary to the precepts of humanity, and/or is prohibited by the internal laws of the PRC and its provincial and municipal governments, and/or international laws and treaties.

    29.    Because of the Defendants' conduct and misconduct, as described herein, the Named Plaintiffs and Class Members, have sustained, and they will continue to sustain, substantial damages, including monetary loss in the hundreds of billions of dollars.

30. This pandemic has already adversely affected the Plaintiffs and Class Plaintiffs in the United States, including in the State of Louisiana.

31. All conditions precedents to the filing of this class action lawsuit has been satisfied, met, and/or waived.

32. Excluded from the Class are the following: (1) the Defendants, and any parent, subsidiary or affiliate organizations, and the officers, directors, agents, servants, or employees of same and the members of the immediate family of any such person; (2) all businesses in Louisiana who timely opt out of this proceeding; (3) all businesses that been given valid releases releasing Defendants from the claims asserted in this Class Action Complaint; (4) all persons who, prior to the filing of this Complaint, have filed a non-class action claim against the Defendants (or any of them) for the claims asserted in this Complaint; and (5) the judge(s) to whom this case is assigned, their employees and clerks, and immediate family members.

33. There are numerous common questions of law and fact that predominate over any questions affecting only individual members of the Class. Among these common questions, of law and fact are the following:

   a) Whether Defendants' conduct was negligent and/or reckless;

   b) Whether Defendants' conduct was clearly contrary to the precepts of humanity;

   c) Whether Defendants' conduct violated established laws within the PRC;

   d) Whether the PRC's bio-weapons labs are ultra-hazardous activities, and caused the release of the virus;

   e) Whether the PRC violated the rules and regulations of the WHO; and

   f) Whether the PRC engaged in an intentional cover-up in order for the international community and the Plaintiff Class not to discover what was taking place with the COVID-19 pandemic.

34. The claims of the Named Plaintiffs are typical of the claims of each member of the

Class in that, among other issues;

    a)    The Named Plaintiff's claims arise from the same course of conduct of Defendants giving rise to the claims of other Class Members;

    b)    The claims of the Named Plaintiffs and each member of the Class are based upon the same legal theories;

    c)    The Named Plaintiffs and each member of the Class have an interest in prevailing on the same legal claimss;

    d)    The types of financial damages incurred by the Named Plaintiffs are similar to those incurred by the other Class Members; and

    e)    The defenses asserted by Defendants will be very similar, if not identical, as to all Named Plaintiffs and Class Members.

35. The Named Plaintiffs are adequate representatives of the Class in which they participate because, together with their legal counsel, each will fairly and adequately protect the interests of the Class. Named Plaintiffs and all Class Members have a similar, if not identical interest in obtaining the relief sought. Proof of the claims of the Named Plaintiffs will also establish the claims of the Class. Named Plaintiffs are not subject to any unique defenses. Named Plaintiffs have no known conflict with the Class and are committed to the vigorous prosecution of this action.

36. The undersigned counsel are competent counsel and will fairly and adequately protect the interests of the Class.

37. The various claims asserted in this action are certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) because prosecuting separate actions by or against individual Class Members would create a risk of inconsistent or varying adjudications.

38. The issues particularly common to the Class Members' claims, some of which are identified above, are alternatively certifiable pursuant to Fed. R. Civ. P. 23( c) (4), as resolution of these issues would materially advance the litigation, and class resolution of these issues is superior to repeated

litigation of these issues in separate trials.

39. The Named Plaintiffs have retained the below counsel to represent them in this lawsuit, and are obligated to pay said reasonable attorney's fees provided recovery is obtained.

### COUNT 1- NEGLIGENCE AND/OR GROSS NEGLIGENCE AND/OR INTENTIONAL HARM

40. Defendants are negligent in allowing the said virus to remain undetected and inadequately contained.

41. These actions constitute res ispsa loquitur under Louisiana law.

42. Said claim are allowable under Louisiana Code Article # 2315

43. Said actions were grossly negligent.

44. If evidence develops to support the same, petitioners request an award for any intentional action which may be revealed.

45. Defendants knew or should have known that their actions, described herein, would cause global harm to businesses, including to Plaintiffs and Class Members and that the risk of such harm was highly likely. Defendants acted in conscious disregard of such foreseeable risk. Defendants' actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and Class Members warranting the imposition of exemplary or punitive damages against Defendants.

46. As a direct and proximate result of Defendants' breaches as described herein, Plaintiffs and the Class Members sustained hundreds of billions or trillions of dollars in financial damages and/or economic loses, and seek actual, special, exemplary, punitive and compensatory damages.

### PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs, Hales Family Limited Partnership(HFLP), Azalea Woods of Ouachita, Westside Plaza, LLC, MODACUP, LLC and JDH Management, LLC on behalf of

themselves and as class representatives for all those similarly situated, demand judgment against Defendants, and pray for the following relief:

      a)      Certification of the Class under Federal Rule of Civil Procedure 23 and appointment of Plaintiffs as representatives of the respective Class and their undersigned counsel as Class counsel;

      b)      An ordering requiring that Defendants pay compensatory and other damages to Plaintiffs and the Class Members, for their economic and non-economic damages and losses identified herein, to full extent permitted by the law;

      c)      An order awarding exemplary or punitive damages related to Defendants' fraudulent, extreme, outrageous, malicious, oppressive conduct that was performed in conscious disregard of the health and safety of American citizens and Louisiana residents.

      d)      Statutory pre-judgment and post-judgment interest on any amounts awarded;

      e)      Costs and expenses in this litigation, including, but not limited to, expert fees, filing fees, and reasonably attorney's fees; and

      f)      Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Named Plaintiffs, in their own behalf and on behalf the Class Members, demand a trial by jury on all issues so triable.

S/Joshua L. Strickland
**HALES & STRICKLAND LAW OFFICES**
JOSHUA L. STRICKLAND (Louisiana Bar #36690)
P.O. Drawer 149
802 Julia Street
Rayville, LA 71269
Telephone: (318) 728-4413
Facsimile: (318) 728-6773
josh@haleslawoffice.net.